504 P.2d 966

**William G. O'CONNOR, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Howard P. Foley Company, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. I CA-IC 685.**

Court of Appeals of Arizona, Division 1, Department B.

Dec. 28, 1972.

Rehearing Denied Jan. 24, 1973.

Review Denied Feb. 27, 1973.

---

Langerman, Begam & Lewis, P. A. by Jack Levine, Phoenix, for petitioner.

William C. Wahl, Jr., Chief Counsel The Industrial Commission of Arizona, Phoenix, Charles M. Brewer, Ltd. by Cecil A. Edwards, Jr., Phoenix, for respondents Employer and Carrier.

Robert K. Park, Chief Counsel State Compensation Fund, Phoenix, for respondent.

EUBANK, Judge.

This review by writ of certiorari questions the lawfulness of an award for non-compensable claim by The Industrial Commission based on the finding that petitioner's illness, Valley fever (coccidioidomycosis or San Joaquin Valley fever), was not an injury arising out of and in the course of his employment.

The petition alleges first, that the finding is unreasonable and unsupported by the evidence, and second, that the lengthy delay on the part of the Commission and the carrier, the State Compensation Fund, in processing his claim constitutes an admission of liability or an estoppel to deny liability for benefits.

Petitioner was employed by respondent Howard P. Foley Company from April, 1968, through March, 1969, as a heavy equipment operator. He was assigned work first in the northern part of Arizona between Williams and Lake Mohave, then in the Tucson area, and finally in Phoenix. Petitioner's employment near Williams, which continued from April through November, 1968, required him to drive a bulldozer through extraordinarily heavy dust conditions for periods of up to twelve hours a day, five or six days a week. The terrain at this construction site was such that petitioner would sometimes sink to his knees in dust when he stepped off his bulldozer, and, in addition, no wetting agent was used to allay the dust problem. It appears that even respirators provided for the workmen were useless since they would clog up with dust almost immediately upon use.

Petitioner testified that he suffered from severe coughing spells, headaches and general fatigue from at least September, 1968, and that these symptoms steadily worsened through October and November of 1968; that he was unable to work steadily although he attempted to do so; and that in March, 1969, he was hospitalized in Wickenburg for one month as a result of these symptoms.

The record of this hospitalization shows that he suffered severe headaches, fatigue and general disorientation, coughed up fresh blood, and that his X-rays revealed "discrete coin lesions in the left midlung". Following his release from the Wickenburg hospital, petitioner was referred to Barrows Neurological Institute for diagnosis and treatment. In mid-April, 1969, petitioner came under the care of Dr. Robert Briggs, a specialist in the field of respiratory diseases who, after extensive testing, diagnosed Valley fever. Dr. Briggs prescribed a course of bed rest and medication, but had not released petitioner to return to work in October, 1969.

It is settled law in this jurisdiction that a disability caused by disease is compensable under certain circumstances. Dunlap v. Industrial Commission, 90 Ariz. 3, 363 P.2d 600 (1961); In re Mitchell, 61 Ariz. 436, 150 P.2d 355 (1944); Enyart v. Industrial Commission, 10 Ariz.App. 310, 458 P.2d 514 (1969). In the recent case of Montgomery Ward Co. v. Industrial Commission, 14 Ariz.App. 21, 480 P.2d 358 (1971) we stated:

". . . Without question under prior Arizona decisions exposure to deleterious conditions associated with one's employment resulting in a disabling injury or disease does constitute an injury by accident, even though there is no *sudden* external event or *sudden* unintended and unexpected internal result. *See* Reilly v. Industrial Commission, . . . [1 Ariz.App. 12, 398 P.2d 920 (1965)] (repeated continuous exposure to lint, resulting in emphysema); Dunlap v. Industrial Commission, 90 Ariz. 3, 363 P.2d 600 (1961) (pneumonia developed as the result of inhaling fumes from a cracked exhaust pipe); English v. Industrial Commission, 73 Ariz. 86, 237 P.2d 815 (1951) (inhalation of fumes over a period of time); In re Mitchell, 61 Ariz. 436, 150 P.2d 355 (1944) (inhal-

ation of carbon tetrachloride fumes). However, in each of the above cases the exposure which resulted in disability was definitely work-connected and peculiar to the employment conditions involved. . . ." (emphasis original) (14 Ariz. App. at 22, 480 P.2d at 359).

Unlike the fact situation in previous cases, where the claimant was able to isolate the precipitating factor of his disease to his employment conditions, Valley fever is a lung disease caused by the inhalation of a spore, which spore is endemic throughout the dry desert regions of Arizona,[1] rendering it exceedingly difficult to prove that the inhalation of the offending spore occurred during a claimant's working hours. The Commission adopted this employment related test primarily on the basis of the opinion of the Arizona Supreme Court in Treadway v. Industrial Commission, supra at n. 1. In Treadway, the claimant attempted to prove that he had aspirated the Valley fever spore while working with materials which had been brought into this state from the San Joaquin Valley area of California, where the spore is also endemic. Noting a complete failure on the part of the claimant to show that the materials had ever been in use in the San Joaquin Valley area, or that they did in fact contain fever spores, our Supreme Court laid down the following principles of law which are pertinent to the instant case:

". . . [T]here is respectable authority for the proposition that under certain circumstances an employee contracting a disease, whether in the immediate place of his employment, or in some other place in pursuance of his employer's direction, may recover compensation as for an injury by accident arising out of and in the course of his employment. . . ."

\* \* \* \* \* \*

---

1. For a medico-legal description of Valley fever *see*: Pacific Employers Ins. Co. v. Industrial Accident Commission, 19 Cal. 2d 622, 122 P.2d 570, 141 A.L.R. 798

(1942) *cited in* Treadway v. Industrial Commission, 69 Ariz. 301, 213 P.2d 373 (1950).

" '. . . There must be a causal connection between his employment, or his place of employment, and his illness—something which happened to him in the performance of his duties, or some contact he made at his place of employment while on duty there—which forms the connecting link between his employment and the contraction of the illness. * * * ' " (citation omitted)

" '* * * That the disease must have a causal connection with the employment and not be merely coincident therewith. * * * ' (citation omitted) Furthermore the law is well settled in those jurisdictions holding a disease to be an 'accident' under certain circumstances that in order for an employee suffering with a disease to recover compensation, he must establish the fact that he was subjected to some special exposure in excess of that of the commonalty. . . ." (69 Ariz. at 307–308, 213 P.2d at 377).

The court then held that:

". . . [T]he disease with which petitioner was admittedly suffering was not traceable to any definite time or place nor was there shown any causal connection between the alleged 'injury by accident' (i. e. the disease) and his employment. At most it was shown to have been merely coincident therewith. This is insufficient as the employee must show that the injury had its origin from a risk connected with the employment and that it flowed from that source as a rational consequence. . . ." (69 Ariz. 308, 213 P.2d at 377–378).

In addition, the burden of proof is on the claimant. Mead v. American Smelting & Refining Co., 90 Ariz. 32, 363 P.2d 930 (1961). In applying these principles, the Industrial Commission referee found as follows:

"From the foregoing, then, it is clear that to establish his legal burden of proof, Applicant must first establish the existence of the infecting organism (spore) at a known time and place at the employment that Applicant has a disease (accepted in this case), and then 'at that point' medically relate (if possible) the existence of said conditions to the (known) disease. In the instant proceedings, there is simply no evidence whatsoever establishing the existence of the infecting organism during the times and/or at the places at which Applicant was employed. Since this basic element has not been established, any purported medical relationship of the disease to the employment must of necessity be invalid as based upon unsubstantiated facts."

Petitioner maintains that the Treadway test is not a correct statement of the law in this jurisdiction, and that

". . . [W]here a workman is exposed to a peculiar or increased risk of injury, through the conditions of his employment, and the risk of harm which is presented actually occurs, such an injury is compensable."

■ We disagree. The authority granting workmen's compensation benefits requires that the accident causing the disability *arise out of* and *in the course of* employment. *See:* Ariz.Const. Art. 18, § 8, A.R.S.; A.R.S. § 23–1021, subsec. A. These are conjunctive prerequisites in order for a claimant to be eligible to receive compensation under the Act, and each prerequisite must be satisfied. City of Phoenix v. Industrial Commission, 104 Ariz. 120, 449 P.2d 291 (1969). In each of the cases cited by petitioner to support his argument that the Treadway test is not applicable, the court found that the claimant had contracted the disabling disease within both the course and scope of employment. In the recent case of Enyart v. Industrial Commission, supra, this Court reiterated the applicability of the Treadway decision while distinguishing it on the facts.

In the instant case, the medical testimony was that the working conditions statistically increased petitioner's capacity to contract the disease, and that he probably contracted it during the period of employment, between July and September of 1968. Other evidence, however, indicated that the

entire area in which petitioner resided was dusty, that he not only drove to and from work under dusty conditions, but that he lived in a trailer and took weekend trips during the period in question in the same geographic area as the construction site. Thus, although the extreme dust conditions on the job were exceptional, the circumstance of dust and the Valley fever spore were prevalent during off-work hours throughout the area in which petitioner lived and worked. In other words, he could have contracted the disease at any time of day anywhere in that geographic area.

■ Although medical opinion as to when petitioner contracted the disease is peculiarly within the realm of expert medical knowledge and may not be disregarded by the Commission, Enyart v. Industrial Commission, supra, the doctor's testimony that the working conditions statistically increased the probability of contracting the disease does not rise to the standard of "reasonable medical certainty", and there was sufficient contrary evidence in the record on which the Commission could base its conclusion that petitioner had not sustained his burden of proving that he contracted the disease by inhaling the spore while on the job, in accordance with the test of Treadway v. Industrial Commission, supra. See also Reilly v. Industrial Commission, 1 Ariz.App. 12, 398 P.2d 920 (1965).

■ Under these circumstances the conclusion of the Commission as the trier of fact cannot be disturbed. Raymer v. Industrial Commission, 18 Ariz.App. 184, 501 P.2d 25 (1972).

In regard to petitioner's second question —the lengthy delay in processing petitioner's claim—the record shows that a Workman's Report of Injury was filed with respondent State Compensation Fund on July 1, 1969, and that Workman's and Physician's Reports were received by the Commission on August 4, 1969. The record further shows that an initial delay of one year in processing petitioner's claim resulted from an erroneous date contained in

one of petitioner's reports, tardiness on the part of the employer in responding to inquiries of the Commission, and the decision of the Commission to initially treat petitioner's claim as falling under the Occupational Disease Disability Law. No explanation for this latter action on the part of the Commission appears in the record, and petitioner claims it was purely dilatory, since Valley fever is plainly not one of the enumerated diseases covered by the Occupational Disease Act. See A.R.S. § 23-1102.

■ The Industrial Commission's Rules of Procedure, in effect at the time of petitioner's injury and applicable to the issue before this Court, were as follows:

"DENIAL OF LIABILITY BY INSURANCE CARRIER OR SELF-INSURING EMPLOYER

"48. Notice of Injury by Commission: —Every insurance carrier authorized to write workmen's compensation insurance in the State of Arizona, including every self-insurer, will be given notice by the Commission of any injury to an employee for which, according to the records of the Commission, such carrier shall appear to be liable under the Workmen's Compensation Law of the State of Arizona."

\* \* \* \* \* \*

"50. Payment of Compensation or Denial of Liability, Time For:—Within fourteen (14) days after the service of such notice, such carriers shall commence the payment to the insured employee of the compensation provided by The Workmen's Compensation Law, or else file with the Commission a written denial of liability."

\* \* \* \* \* \*

"52. Failure to Deny Liability Admits Same:—If no written denial be filed within such time, or if the payment of compensation be not commenced within such time, the injury, the continuance of the disability and the liability of the carriers for compensation, as well as liability for compensation during the future

continuance of the same disability, shall be deemed admitted by such carriers."

The only sanctions imposed by these Rules for failure to timely process a claim are imposed against the insurance carrier and not the Commission. *See e. g.*, Kasprowiz v. Industrial Commission, 14 Ariz.App. 75, 480 P.2d 992 (1971). In the case at bar, the insurance carrier, respondent State Compensation Fund,[2] did not receive "notice" from the Commission, as contemplated by Rule 48, supra, until an award denying benefits under the Occupational Disease Act was entered by the Commission on July 31, 1970. The carrier's Notice of Claim Status denying liability was dated August 14, 1970, just fourteen days after receipt of this notice.

 Petitioner, however, contends that the failure of the Commission or the Fund to act after being requested to do so by letter, creates an equitable estoppel against them to deny compensability. Initially it should be remembered that as a general rule estoppel *in pais* (by conduct) will not operate against the state or its agencies. Kerby v. State ex rel. Frohmiller, 62 Ariz. 294, 157 P.2d 698 (1945); Columbia Investment Co. v. M. M. Sundt Const. Co., 1 Ariz.App. 124, 400 P.2d 132 (1965). Furthermore, in Contreras v. Industrial Commission, 98 Ariz. 221, 403 P.2d 535 (1965), our Supreme Court reiterated the essential elements of estoppel as follows:

". . . (1) There must be a false representation or concealment of material facts; (2) it must have been made with knowledge, actual or constructive, of the facts; (3) the party to whom it was made must have been without knowledge of or the duty of inquiring further as to the real facts; (4) it must have been made with the intention it should be acted upon; and (5) the party to whom it was made must have relied on or acted on it to his prejudice.

There can be no estoppel if any of these elements are absent." (98 Ariz. at 227, 403 P.2d at 539).

In the case at bar there was no false representation nor concealment of material facts by the Commission; there was no lack of knowledge on the part of petitioner; and there was no action taken on the part of petitioner in reliance on the inaction of the Commission. Furthermore, petitioner was not without a remedy. The case of Bergstresser v. Industrial Commission, 105 Ariz. 27, 458 P.2d 961 (1969), reaffirms that appellate courts, upon proper application, will compel the Commission to act when undue delay operates to deny a claimant his rights under the Workmen's Compensation Act.

Although we do not justify the delay that occurred in this case, the record does not support any other inference than that it resulted from an administrative mixup. In our opinion this is not a proper case for estoppel.

Award affirmed.

HAIRE, Chief Judge, Division 1, and JACOBSON, J., concur.

---

2. It must be noted that the Arizona Legislature acted to separate the functions of the State Compensation Fund and the Industrial Commission by amending A.R.S. § 23–981, effective Jan. 1, 1969. *See* Laws 1968, 4th S. S. Ch. 6 § 20.