544 P.2d 703

**Judy R. BARBER, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Francis S. Kon, D.O., Respondent Employer, State Compensation Fund, Respondent Carrier.**

**No. I CA–IC 1314.**

Court of Appeals of Arizona, Division 1, Department C.

Jan. 20, 1976.

Johnson, Hayes & Dowdall, Ltd. by Dee-Dee Samet, Tucson, for petitioner.

Greg L. Folger, Chief Counsel, The Industrial Commission of Ariz., Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund by J. Victor Stoffa, Phoenix, for respondents employer and carrier.

## OPINION

WREN, Judge.

The petitioner, Judy R. Barber, brings this writ of certiorari to challenge the finding of the Industrial Commission that she did not sustain an injury by accident arising out of and occurring in the course of her employment. This finding is not supported by substantial evidence and the award must be set aside.

The hearing officer found the facts to be as follows: Judy R. Barber commenced working for Dr. Francis S. Kon, the respondent employer, in August of 1973. In September she began taking two prescribed medications for headaches. She took the medication as needed, taking each approximately three times a week until May of 1974 when she began diminishing her use of them.

On December 19, 1973, during the course of her employment as a medical assistant, Barber came into contact with a young boy who was found to have infectious hepatitis. On December 24, 1973, she again came in contact with a person suffering from infectious hepatitis. On January 16, 1974, Barber was admitted to Phoenix General Hospital complaining of symptoms which had begun ten days earlier. Her treating physicians, Dr. T. R. Lum and Dr. Murray H. Cohen, diagnosed acute viral hepatitis.

At the hearing, the four physicians who testified agreed that Barber had had hepatitis. Dr. Shaw McDaniel testified that the exact method of contracting infectious hepatitis was not known nor was the length of exposure time. He felt, however, that the type of contacts Barber had had would be sufficient to contract the virus. Dr. McDaniel stated if it were known that a person who had infectious hepatitis had been around someone with infectious hepatitis two weeks prior to the onset of the hepatitis, a physician would assume as a probability that the disease was contracted through that exposure.

At the request of the respondent carrier, State Compensation Fund, Barber was examined by Dr. McDaniel. Based upon his examination of September 5, 1974, tests performed and a review of her medical history, the doctor testified that in his opinion Barber had not had infectious or viral hepatitis, but had developed cholestatic or drug-induced hepatitis as a result of the medication she had been taking. This opinion according to the hearing officer established a medical conflict.

The findings of the hearing officer also focused on certain questions propounded on cross-examination concerning the likelihood of Barber contracting the hepatitis from a source outside her work. Both Drs. Lum and Cohen testified that Barber may possibly have been unknowingly exposed to hepatitis and contracted the virus at some time other than in her employer's office. However, the doctors stated that statistically there was a higher probability of her having contracted it from known exposures rather than from an unknown source. Citing the case of *O'Connor v. Industrial Commission,* 19 Ariz.App. 43, 504 P.2d 966 (1972), the hearing officer noted that testimony asserting that working conditions statistically increased the probability of contracting a disease does not rise to the standard of reasonable medical certainty.

On these two alternative grounds, the conflict in medical testimony and the failure to establish causal relationship to a reasonable medical certainty, the hearing officer concluded that Barber had not sustained her burden of proof and had not suffered an injury by accident in the course and scope of her employment.

■ Findings of the Industrial Commission will not be disturbed when the evidence is conflicting unless it can be shown that upon no reasonable consideration of the evidence could such a conclusion have been reached. *Malinski v. Industrial Commission*, 103 Ariz. 213, 439 P.2d 485 (1968); *Books v. Industrial Commission*, 92 Ariz. 302, 376 P.2d 769 (1962). Barber urges that the testimony of Dr. McDaniel, coupled with the evidence and the hearing officer's finding concerning her use of medication, negate the opinion expressed by Dr. McDaniel and the finding that she suffered from cholestatic hepatitis. She asserts that the award was not supported by substantial evidence.

Dr. McDaniel expressed the opinion that Barber had not been suffering from infectious or viral hepatitis but that she had had cholestatic hepatitis induced by the medication she had been taking for headaches. However, subsequent testimony of Dr. McDaniel disproves his opinion. In response to a question concerning cholestatic hepatitis, he described the course of the illness and stated that "generally speaking, when they stop taking these drugs, the cells shrink down and the bile begins to flow and they're over it." He was later asked:

"Q. Is it possible for cholestatic hepatitis to enter a state of remission even though the drugs continue to be used?

Is that possible?

"A. I doubt that.

I don't believe that would be possible. If the drug caused it in the first place, it's bound to make it worse if you keep taking it."

Later on cross-examination he testified:

"A. . . . as long as you continue to take the thing (the drug) that was causing it (the hepatitis) it wouldn't get better."

The hearing officer found that Barber *took her medication at a consistent rate from September of 1973 until May of 1974.* Her use of the drug was then diminished. According to Dr. McDaniel's testimony then, if she had cholestatic hepatitis, she would not have improved but would have gotten worse from the onset of her symptoms until at least May of 1974; and could not have recovered until she stopped taking the medication entirely. However, it is undisputed that Judy Barber had an onset of hepatitis symptoms in January, 1974, had a remission in February, and a relapse in March. She was hospitalized for a week in March and then gradually improved. During this time, the hearing officer found consistent use of the medication Dr. McDaniel felt caused the hepatitis.

■ Viewing Dr. McDaniel's testimony as a whole, his opinion that Barber was suffering from cholestatic hepatitis, and his statement about continued drug usage, cannot be squared with the facts as found by the hearing officer. Consequently, the doctor's opinion cannot be considered substantial evidence upon which the hearing officer could have concluded that Barber had been suffering from cholestatic rather than infectious hepatitis, developed without relation to her employment.

■ There is also no substantial evidence to support a finding that Barber did not sustain her burden of proving to a reasonable degree of medical certainty that she contracted the hepatitis during the course of her employment. In making this finding the hearing officer relied on *O'Connor v. Industrial Commission*, supra, a valley fever case. We find the facts of *O'Connor* to be easily distinguishable from the facts here.

In *O'Connor*, the claimant attempted to prove that he inhaled the spore causing valley fever during the course of his employment. It is a fact that valley fever is endemic to dry, desert regions in Arizona and that claimant worked in such an area. However, the facts also revealed that the claimant resided in an area where the val-

ley fever spore would be prevalent and re-created in an area near the construction site on weekends. The medical testimony was that the working conditions statistically increased the probability of contracting valley fever. The Court held that such testimony does not rise to the standard of reasonable medical certainty.

The *O'Connor* case is distinguishable on several bases. First, it was established in *O'Connor* that the claimant was exposed to areas where valley fever spores were prevalent both during working time and leisure time. There was no testimony that Barber was exposed to infectious hepatitis at any time other than in her employer's office. Second, the claimant in *O'Connor* could not isolate any particular instance when the spore was probably inhaled, it could have been any time anywhere in the geographic area. Barber, on the other hand, can relate her exposure to two specific instances. Third and most importantly, the unanimous expert medical testimony was that although the exact method of contracting infectious hepatitis is unknown, to a reasonable medical probability the two exposures were the cause of Barber contracting hepatitis. This case is more analogous to *Enyart v. Industrial Commission*, 10 Ariz.App. 310, 458 P.2d 514 (1969), where a claim was found to be compensable because the exposure to the disease-carrying fungus on the job was found to be the probable cause of claimant's contracting the illness where there was no evidence of exposure off the job. The doctors testifying in the case herein admitted the *possibility* that Barber may have unknowingly been exposed to hepatitis outside of her employment but that the known exposures within the normal incubation period created a reasonable medical probability that these known exposures caused Barber to contract the virus.

The award is set aside.

NELSON, P. J., and SCHROEDER, J., concur.