NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

RANDALL MANSANARES, *Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

METRO AUTO AUCTION INC., *Respondent Employer,*

NORGUARD INSURANCE COMPANY, *Respondent Carrier.*

No. 1 CA-IC 17-0065
FILED 2-28-2019

Special Action – Industrial Commission
ICA Claim No.  20153-240197
Carrier Claim No.  MEWC692966-006
The Honorable C. Andrew Campbell, Administrative Law Judge

**APPEAL DISMISSED**

COUNSEL

Randall Mansanares, Buckeye
*Petitioner*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent ICA*

Jardine, Baker, Hickman, & Houston, PLLC, Phoenix
By Stephen C. Baker
*Counsel for Respondent Employer and Respondent Carrier*

---

## MEMORANDUM DECISION

Judge Jennifer M. Perkins delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Michael J. Brown joined.

---

**P E R K I N S**, Judge:

¶1 Randall Mansanares appeals a decision upon review from the Industrial Commission of Arizona ("ICA") affirming a 2017 decision upon hearing that denied him temporary disability benefits but awarded medical benefits until September 20, 2016, when his industrial injury was found to be medically stationary. For the following reasons, we dismiss for lack of jurisdiction.

### FACTUAL AND PROCEDURAL BACKGROUND

¶2 On October 29, 2015, Mansanares worked as a lot attendant for Metro Auto Auction ("Metro") and hyperextended his right arm while getting out of a tall truck. Metro terminated Mansanares later that day for unrelated reasons. That night, Mansanares started to feel pain on the thumb side of his right wrist. He sought treatment at an urgent care on November 6, where Dr. Richard Parker diagnosed him with a sprained wrist and prescribed rest and mild pain relievers.

¶3 Mansanares filed an industrial injury claim on November 30. He then saw Dr. Mehdy Zarandy on December 4, who prescribed mild pain relievers and a wrist brace and imposed work restrictions of lifting, pulling, or pushing only up to 20 pounds. Metro's insurance company issued a notice of claim status denying Mansanares's claim on December 18, 2015, and on January 11, 2016, Mansanares requested a hearing.

¶4 On February 2, 2016, Mansanares saw Dr. Kent Chou, a board-certified orthopedic surgeon. Chou diagnosed Mansanares with de

2

Quervain's tenosynovitis, a condition characterized by inflammation of the thumb-side tendons in the wrist. Chou treated this condition with a corticosteroid injection.

¶5        Dr. Peter Campbell, a board-certified orthopedic surgeon, conducted an Independent Medical Examination ("IME") of Mansanares on March 22, 2016. Campbell accepted as true that Mansanares had de Quervain's tenosynovitis at one time, and stated the diagnosis was consistent with the location of the injection, but opined that Mansanares's injury was stationary with no permanent impairment as of the March 22 IME. Campbell then wrote two addenda to his IME report after reviewing records from Chou's office and Mansanares's primary physician. Campbell stated each time that the additional information he reviewed did not alter his opinion.

¶6        After a hearing, an ALJ ruled on August 10, 2016, that Mansanares's injury was compensable, but did not decide the amount or nature of his benefits or when his injury became stationary, if at all. Metro's insurance company subsequently issued a notice of claim status accepting Mansanares's claim, but stated that it owed Mansanares nothing more because his industrial injury was stationary without permanent impairment as of March 22, 2016. Mansanares then made a series of demands for payment on Metro and its insurance carrier; he also filed these with the ICA. The ALJ treated the first of these demands as a bad faith claim and denied it after briefing. Mansares did not seek review of that decision. Upon receiving the second demand for payment, the ALJ ruled that he no longer had jurisdiction over the claim and that the amount of benefits was outside the scope of the hearing over which he presided. Instead, he treated the demand as a request for a hearing on the amount of benefits.

¶7        A different ALJ heard that claim and took testimony from Mansanares, Chou, and Campbell.

¶8        Chou testified that after he administered the injection, he saw Mansanares again on March 9, 2016, at which time the de Quervain's tenosynovitis had started to heal. He testified Mansanares reported "that his pain was 50 percent better." Chou recommended that Mansanares use a splint on his wrist and advised Mansanares "to watch how he lifts," but did not prescribe another injection at that examination. When Chou saw Mansanares on April 28, however, Mansanares reported his pain had suddenly returned in the middle of April after almost completely subsiding. Chou recommended another injection, but Mansanares wanted an MRI, which was performed on May 13.

**¶9**         The MRI showed that Mansanares's extensor pollicis brevis tendon was nearly or completely torn, and another affected tendon was chronically inflamed, but not torn. Chou testified that a tear in the extensor pollicis brevis tendon is "very very rare," but regardless, "that tendon is completely expendable" because another tendon can serve the same functions. Chou recommended either another injection or exploratory surgery, but Mansanares declined the treatments in order to seek a second opinion.

**¶10**         Campbell reexamined Mansanares in March 2017. He testified that after the second examination and a review of records from Chou's office, his opinion on the industrial injury did not change. Further, he agreed with Chou that the extensor pollicis brevis tendon is redundant, stating "[t]hat's a tendon we often borrow in surgery to use for a tendon graft."

**¶11**         The ALJ entered a decision upon hearing on August 31, 2017. The ALJ found Campbell's testimony more probably correct and that Mansanares's industrial injury was stationary as of September 20, 2016. The ALJ further held Mansanares failed to meet his burden of showing entitlement to temporary disability benefits, either total or partial, and further failed to proffer evidence that he attempted to mitigate his damages. Mansanares requested review, and on October 12, 2017, the ALJ affirmed the decision upon hearing. Mansanares then petitioned this Court for a writ of certiorari. *See* Ariz. Rev. Stat. ("A.R.S.") §§ 23-943(H), -951(A) (2019); Ariz. R. P. for Spec. Actions 10; *Watts v. Indus. Comm'n*, 180 Ariz. 512, 513 (1994).

## DISCUSSION

**¶12**         This Court has an independent duty to examine whether we have jurisdiction over an appeal. *Ochoa v. Bojorquez*, 245 Ariz. 535, 535–36, ¶ 2 (App. 2018). Failure to timely file a petition for certiorari with this court divests us of jurisdiction. *Smith v. Indus. Comm'n*, 27 Ariz. App. 100, 101 (1976) (quoting *Contreras v. Indus. Comm'n*, 98 Ariz. 221, 223 (1965)). Because Mansanares did not timely file his petition, we have no jurisdiction over the petition.

**¶13**         "The decision upon review shall be final unless within thirty days after the date of mailing of copies of such decision to the parties, one of the parties applies to the court of appeals for a writ of certiorari pursuant to § 23-951." A.R.S. 23-943(H). Further, the "rules of civil procedure relating to certiorari shall apply so far as applicable and not in conflict with this

chapter." A.R.S. § 23-951(E); *see also* Ariz. R. P. Spec. Actions 10(k); Ariz. R. Civ. App. P. 5(a). We thus compute time periods according to Arizona Rule of Civil Procedure 6(a). That rule states that if the last day is a Saturday, Sunday, or legal holiday, "the period runs to the next day that is not a Saturday, Sunday, or legal holiday." Ariz. R. Civ. P. 6(a)(3); *cf.* Ariz. Admin. Code R20-5-105(B).

¶14        The ALJ mailed the Decision Upon Review Affirming Decision Upon Hearing and Findings and Award for Temporary Disability on October 12, 2017. The 30-day filing period expired on November 11, a Saturday, making November 13 the last day for Mansanares to file his petition for a writ in this court. Mansanares mailed his petition on November 13, and we received it on November 14, 2017. A petition for a writ must be received within the 30-day period, not merely mailed within that period. *Smith*, 27 Ariz. App. at 101–02. Mansanares's petition was untimely, divesting us of jurisdiction.

## CONCLUSION

¶15        For the foregoing reasons, we dismiss Mansares's petition for lack of jurisdiction. Metro's Motion to Strike Portions of Reply Brief, filed December 20, 2018, and Metro's Motion to Strike Notice of Errata, filed February 25, 2019, each is denied as moot.



AMY M. WOOD • Clerk of the Court
FILED:  AA